**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

**DR. AMINAH KNIGHT,**

*Plaintiff,*

**vs.**

**CITY OF GRAND PRAIRIE,**

**GOVERNOR GREG ABBOTT,** in his official capacity as Governor of the State of Texas,

**EPIC WATERS INDOOR WATERPARK,**

*Defendants.*

**Case No.: 1:26-cv-03196**

**Hon.:**

## COMPLAINT

PLAINTIFF **Dr. Aminah Knight**, by and through her undersigned counsel, CAIR LEGAL DEFENSE FUND, brings this Complaint against DEFENDANTS: the **City of Grand Prairie** ("City"); **Governor Greg Abbott** ("Abbott"); and **EPIC Waters Waterpark** ("Waterpark"); and alleges as follows:

## INTRODUCTION

1. Since 2024, Dr. Aminah Knight has hosted an annual Eid al-Adha celebration at EPIC Waters Waterpark in the city of Grand Prairie, Texas, without incident.
2. This year, however, things unfolded very differently.
3. Dr. Knight's peaceful efforts to curate a welcoming space for Muslims in celebration of Eid were twisted against her. Although Dr. Knight did exactly as other religious

communities had long been permitted to do, Government Abbott singled her out for a special punishment.

4. Governor Abbott threatened to withhold approximately $530,000 in state public safety grant funding from the City of Grand Prairie if it did not cancel the event. In turn, the City and its agent, EPIC Waters Indoor Waterpark, capitulated to Governor Abbott's demands and cancelled the event.

5. Governor Abbott's abuse of his executive power to single out and punish Muslims for exercising their religious freedoms violates the Constitution, as the First Amendment's Free Speech Clause prohibits the City and the Waterpark from executing the Governor's every discriminatory whim.

**PARTIES**

6. Plaintiff Dr. Aminah Knight is a resident of Dallas, Texas. She has resided in the Dallas–Fort Worth metroplex since 2018.

7. Defendant Greg Abbott is the Governor of Texas, where he heads its executive branch. In this role, Governor Abbott wields extensive authorities over state funds. Governor Abbott resides in Austin, Texas. Governor Abbott is being sued in his official capacity only.

8. Defendant City of Grand Prairie is a city located in the heart of the Dallas–Fort Worth metroplex. Grand Prairie is a municipal corporation which owns the waterpark that Dr. Knight was forbidden from renting.

9. Defendant EPIC Waters Indoor Waterpark is a state-funded, municipally owned waterpark located in Grand Prairie, Texas. EPIC Waters is operated by American Resort Management, LLC, ("ARM") a privately held hospitality and waterpark

management firm headquartered in Grand Prairie, Texas, and led by Chief Executive Officer Richard Coleman. ARM operates EPIC Waters at the direction of the City of Grand Prairie, and the City of Grand Prairie retains ultimate control over the city-owned property's administration.

## JURISDICTION AND VENUE

10. This is an action for damages and declaratory and injunctive relief arising under the First and Fourteenth Amendments to the U.S. Constitution and 42 U.S.C. § 1983.
11. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343 because this action asserts violations of federal law.
12. Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) and (2) because the events that gave rise to this lawsuit occurred within the judicial district.

## BACKGROUND

13. In 2024, Dr. Knight hosted her inaugural Eid celebration at EPIC Waters Waterpark, amassing a turnout of approximately 300 attendees.
14. Following the resounding success of this event, the Waterpark reached out to Dr. Knight to propose that she continue hosting annual Eid celebrations at their facility.
15. In 2025, attendance nearly doubled to approximately 600 attendees, many dressed in modest attire coming together in observance of Eid.
16. Dr. Knight proceeded with planning her "DFW Epic Eid" event for June 1, 2026, at the Waterpark. This entailed executing a contract with the Waterpark, promoting the event through online advertising and printed flyers, and selling tickets in advance to begin making payments toward the outstanding balance of the contract.

17. Consistent with the arrangement from previous years, the Waterpark permitted Dr. Knight to make periodic ticket-sale payments every few weeks. As she sold tickets, the Waterpark would charge her card for the corresponding amounts, with any remaining balance due on the morning of the event. This payment arrangement accounted for the fact that ticket purchases historically surged during the final 24 to 48 hours before Eid.

18. On May 3, 2026, Dr. Knight's husband told her that he had heard about a podcast discussing the EPIC City housing controversy and purportedly tying it to Dr. Knight's upcoming Eid celebration at EPIC Waters Waterpark.

19. By the morning of May 4, 2026, Dr. Knight woke up to an email from the *New York Post* seeking comment on her upcoming event and questioning why she was excluding people, citing an early promotional flyer that had described the event as "Muslim only."

20. Dr. Knight responded to the inquiry, explaining that the event was intended to celebrate the Islamic holiday of Eid and highlighting the significance of a modest dress code, but clarifying that the event was open and anyone who wished to attend was more than welcome.

21. Dr. Knight apologized to anyone who may have been offended by the original wording and promptly updated both her website and promotional flyers to read "Modest dress required." This change clarified the event's dress expectations while reinforcing that the celebration was truly inclusive, regardless of religious affiliation.

22. Shortly thereafter, the Waterpark contacted Dr. Knight and requested that she execute an updated version of her contract, which she promptly signed.

23. The City of Grand Prairie subsequently issued a statement that all individuals have the right to rent the Waterpark to host private events and, as with any other private gathering, are not required to provide general entry to the public writ large.

24. But by May 6, 2026, Governor Abbott had latched onto the controversy, issuing a public statement that characterized the event as religious discrimination and demanded its cancellation. His statement on X read:

> “A city-owned water park in Grand Prairie openly advertised a "MUSLIMS ONLY" event -- closed to the general public. That's religious discrimination. It's unconstitutional. I signed HB 4211 into law -- banning Muslim only no-go zones in Texas. The City must cancel the event and commit to never allowing something like it again by May 11th, or lose $530,000 in state grants. Let this be a lesson to local officials: Facilities funded by ALL taxpayers are not just for a subset of Texans.”
>
> Greg Abbott (@GregAbbott_TX), X (May 6, 2026, at 12:15 CT), https://x.com/GregAbbott_TX/status/2052074705582989453

25. Governor Abbott’s office also sent a letter to Grand Prairie May Ron Jenson explicitly comparing Dr. Knight’s Eid celebration to a racially segregated event, stating “[a]n event at a city-owned pool that was publicly and indiscriminately advertised ‘Whites only’ would surely violate the Constitution.” Letter from the Office of Greg Abbott, Tex. Governor, to Ron Jensen, Mayor of the City of Grand Prairie (May 6, 2026).

26. Governor Abbotts’ disingenuous characterizations of the event intentionally overlook the fact that the Waterpark has historically hosted a wide range of private and group events, including events serving the Christian community which it has publicly advertised as “EPIC Church Days.”

27. In fact, the Waterpark's own website expressly invites groups of all kinds to host events at its facility, stating: "Whether you're planning a family reunion, school trip, scout outing, or **church gathering**, we've got everything you need to make it EPIC."[1]

28. On the same day as Governor Abbott issued his inflammatory remarks, Dr. Knight spoke with representatives of the Waterpark, who assuaged her concerns and stated that the controversy was probably nothing to worry about provided that President Trump did not become involved.

29. However, later the same day, a Waterpark supervisor called Dr. Knight to apologize and inform her that the Eid event had indeed been canceled. Although Dr. Knight requested written confirmation of the cancellation by email, no such confirmation was ever provided. Dr. Knight also attempted to follow up with her Waterpark contacts by phone and text messages but received no response to either.

30. The City of Grand Prairie then publicly announced that the event was canceled, stating that its decision was made "after further review and in [its] best interest."

31. The following morning, on May 7, 2026, at 11:24 A.M., Dr. Knight received an email from EPIC Waters General Manager Jessi O'Daniel stating that "because we did not receive the required deposit at the time that you sent in your paperwork, as our contract stipulates, we are unable to move forward with the event on June 1." However, the terms of the contract stipulated that the deposit was due May 11, 2026—not at the time the paperwork was submitted. Accordingly, Dr. Knight was not in violation of the contract's payment terms.

[1] *Group Events*, EPIC WATERS INDOOR WATERPARK, https://epicwatersgp.com/groups/groups-events/.

32. In fact, just two days earlier, on May 5, 2026, at 8:24 p.m., Dr. Knight had texted a Waterpark supervisor advising that she was prepared to pay the deposit the following day. The supervisor responded, "Awesome, that would be great." The same evening, at Ms. O'Daniel's request, Dr. Knight had also signed and returned the contract's terms page.

33. Dr. Knight responded to Ms. O'Daniel by email, again requesting written clarification as to the basis for the Waterpark's cancellation of the Eid event. Specifically, she asked whether the cancellation was related to any policy, safety concerns, public pressure, or other considerations. Dr. Knight received no response to these questions.

34. On May 11, 2026, within the deadline expressly provided by the contract, Dr. Knight arranged for the certified check to be hand-delivered to Ms. O'Daniel's desk at EPIC Waters, and Dr. Knight confirmed delivery by email that same day.

35. The following day, on May 12, 2026, Ms. O'Daniel responded to Dr. Knight by email, stating that "the proposed event is not moving forward at the park" and that "there is no money due to Epic Waters." The certified check was subsequently mailed back to Dr. Knight. Dr. Knight then refunded all individuals who had purchased tickets to the Eid celebration thus far, incurring transaction fees per individual refund.

36. Although Dr. Knight sent multiple follow-up emails seeking an explanation for the cancellation of the Eid event, including whether decision was connected to the political controversy and hysteria that had erupted surrounding the event, she received no substantive response beyond EPIC Waters' May 12 email stating simply that the event would not proceed.

37. Between May 4, 2026, and May 19, 2026, Dr. Knight received at least 61 harassing and threatening voicemails and emails, the vast majority of which came after Governor Abbott's inflammatory public remarks. These messages attacked virtually every aspect of Dr. Knight's identity. She was subjected to racial slurs, including the the N-word, called a "bitch" and a terrorist, and sent sexually degrading and violent content. Callers and senders also targeted her religion, directing insults at the Prophet Muhammad (Peace Be Upon Him) and celebrating the deaths of Muslim children. Others threatened that she would be killed or stoned in Muslim-majority countries, threatened to report her to government authorities, and warned that her home would be raided. Multiple callers told Dr. Knight to "go back to her country" and to leave "before it's too late," despite the fact that she was born and raised in Brooklyn, New York. One caller went so far as to shout into the phone that Dr. Knight would die that very night. These threats have left Dr. Knight fearing for her own safety and that of her husband and their six children.

38. Dr. Knight also suffered professional harm as her business, Excellence Early Learning Center, received numerous fake one-star reviews from individuals who did not have children enrolled and had never visited the facility.

39. Dr. Knight has spoken candidly about how the emotional toll of this ordeal, explaining: "I'm sad. I'm sad that something the was being done with such good intention, just for joy, has been turned into something that it's not… [and] God knows

I was just trying to plan something for my community within my community just like I did last year."[2]

40. Dr. Knight has firmly rejected the characterization of her event as segregation. As a Black woman, she takes pride in the fact that she can not only enter EPIC Waters Waterpark but also rent the facility to celebrate her faith and bring her community together. In her view, the event represented an opportunity to exercise the very freedoms that previous generations of her ancestors were denied—not an effort to exclude or segregate others.

41. Despite Governor Abbott's public efforts to malign the event, Dr. Knight has remained steadfast in her faith and her commitment to her community. As she powerfully puts it, "[her] faith is not something to fear."[3]

## CLAIM I

***Abbott's demand & the City and Waterpark's compliance violated Dr. Knight's First Amendment rights under the jawboning doctrine.***

42. Plaintiff restates the foregoing paragraphs as is set forth fully herein.

43. It has long been established that a government entity's threat of invoking legal sanctions and other means of coercion against a third party to achieve the suppression of disfavored speech violates the First Amendment. *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58 (1963).

44. Stated plainly, "[c]oercion of a third party can be the means by which the government violates the First Amendment rights of another." *Nat'l Rifle Ass'n v. Vullo*, 602 U.S.

---

[2] Maven Navarro, *Grand Prairie cancels Muslim celebration after press from Texas Gov. Greg Abbott*, FORT WORTH STAR–TELEGRAM (May 7, 2026, at 11:06 CT), https://www.star-telegram.com/news/politics-government/article315670632.html.

[3] Sarah Bahari, *Grand Prairie cancels Muslim event at waterpark after Abbott threatens funding*, THE DALLAS MORNING NEWS (May 6, 2026, at 20:00 CT), https://www.dallasnews.com/news/faith/article/abbott-threatens-grand-prairie-s-funding-muslim-22245060.php.

175, 200 (2024) (Brown Jackson, J., concurring). Indeed, "the critical takeaway" from *Vullo* "is that the First Amendment prohibits government officials from wielding their power selectively to punish or suppress speech, directly or (as alleged here) through private intermediaries." *Vullo* at 198.

45. The Supreme Court has clearly explained that the First Amendment guarantees the "right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends." *Roberts v. U.S. Jaycees*, 467 U.S. 609, 622 (1984). *See also Americans for Prosperity Foundation (APF) v. Bonta*, 594 U.S. 595, 606 (2021). Indeed, "privacy in group association" is "indispensable to preservation of freedom of association, particularly where a group espouses dissident beliefs." *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 462 (1958).

46. The jawboning doctrine prohibits government officials from indirectly doing what they cannot do directly: a government official cannot coerce a private party to punish or suppress disfavored speech on their own behalf. *See Vullo* at 175 (finding that the NRA plausibly alleged First Amendment violation where a New York regulatory official threatened DFS-regulated entities with adverse enforcement action unless they severed business ties with the NRA.)

47. Under *Vullo*, the threat need not be explicit, and the coercive nature of the communication is assessed against the backdrop of the official's authority and the totality of circumstances. *Id.* at 194.

48. To state a claim that the government violated a plaintiff's First Amendment rights via third party coercion, a plaintiff must plausibly allege conduct that, viewed within

context, could be reasonably understood to convey a threat of adverse government action in order to punish or suppress the plaintiff 's speech. *Id.* at 191.

49. Courts have applied a multi-factor test to distinguish permissible persuasion from impermissible coercion, examining: (1) word choice and tone; (2) the existence of regulatory authority; (3) whether the speech was perceived as a threat; and (4) whether the speech refers to adverse consequences. *Id.* at 189.

50. In the present case, Governor Abbott did not mince his words in publicly issuing his direct threat: "cancel the event… or lose $530,000 in state grants," easily satisfying all four factors.

51. Jawboning was an effective mechanism by which Defendant Abbott was able to chill "disfavored" expressions of the Islamic faith "because intermediaries" like the City of Grand Prairie are "less invested in the speaker's message and thus less likely to risk the regulator's ire[,]" *Id.* at 197–98 (cleaned up).

**CLAIM II**

***Abbott's demand & the City's compliance violated Dr. Knight's First Amendment rights under the Free Exercise Clause.***

52. Plaintiff restates the foregoing paragraphs as is set forth fully herein.

53. The Supreme Court has established that the government fails to act neutrally when it proceeds in a manner intolerant of religious beliefs or restricts practices because of their religious nature. *Fulton v. Cty. of Phil., Penn.*, 593 U.S. 522 (2021).

54. A law or government action that targets religious conduct for distinctive treatment must be justified by a compelling governmental interest and must be narrowly tailored to advance that interest. *See Church of Lukumi Babalu Aye, Inc. v. Cty. of Hialeah*, 508 U.S. 520 (1993) (finding that ordinances failed to survive strict scrutiny

where they were neither neutral nor generically applicable as they were designed to suppress the Santeria religion specifically). *See also Islamic Ctr. of Miss., Inc. v. Cty. of Starkville*, 840 F.2d 293 (5th Cir. 1988) (finding the city's denial of a land use permit for an Islamic center while approving permits for numerous other churches constituted differential treatment and failed to survive strict scrutiny).

55. In the present case, Abbott did not issue a directive to Grand Prairie to halt all religious events or gatherings at the Waterpark. In fact, EPIC Church Days have not garnered any similar negative attention from Abbott at all.

56. Abbott made clear his intention: "banning Muslim only no-go zones in Texas," which fails to qualify as a nondiscriminatory compelling interest.

57. Further, forcing the City to cancel the event by holding $530,000 of state grant funds cannot possibly qualify as a narrowly tailored means to Abbott's ends.

**CLAIM III**

***Abbott's demand & the City & Waterpark's compliance violated Dr. Knight's rights under the Texas Religious Freedom Restoration Act.***

58. Plaintiff restates the foregoing paragraphs as is set forth fully herein.

59. The Texas Religious Freedom Restoration Act (TRFRA) holds that a government agency may not substantially burden a person's free exercise of religion. Tex. Civ. Prac. & Rem. Code Ann. § 110.003.

60. A "government agency" expressly includes the state, any municipality, and any agency of a municipality. Tex. Civ. Prac. & Rem. Code Ann. § 110.001(a)(2).

61. "Free exercise of religion" is defined under TRFRA as an act or refusal to act that is substantially motivated by sincere religious belief. Tex. Civ. Prac. & Rem. Code Ann. § 110.001.

62. A government agency may overcome this prohibition under TRFRA only by demonstrating that the burden (1) is in furtherance of a compelling governmental interest and (2) is the least restrictive means of furthering that interest. Tex. Civ. Prac. & Rem. Code Ann. § 110.003.

63. Courts apply a four-part test, determining: (1) whether the government's conduct burdens the plaintiff's free exercise of religion; (2) whether the burden is substantial; (3) whether the conduct furthers a compelling governmental interest; and (4) whether it is the least restrictive means of doing so. *Merced v. Kasson*, 577 F.3d 578 (5th Cir. 2009) (citing *Barr v. Cty. of Sinton*, 295 S.W.3d 287 (Tex. 2009).

64. In the instant case, Dr. Knight's free exercise of her religion of Islam was substantially burdened when Governor Abbott forced the City of Grand Prairie to cancel her contract with EPIC Waters Indoor Waterpark to host hundreds of attendees at her 2026 Eid celebration.

65. Governor Abbott did not have a compelling interest to justify this burden on Dr. Knight, nor was his means of doing so narrowly tailored. Complaint, *supra* 58, 59.

## CLAIM IV

***Abbott's demand & the City & Waterpark's compliance constituted viewpoint discrimination in violation of Dr. Knight's First Amendment rights.***

66. Plaintiff restates the foregoing paragraphs as is set forth fully herein.

67. The Supreme Court has repeatedly held that viewpoint discrimination is the most egregious form of content discrimination, and that the government must abstain from regulating speech when the specific motivating ideology or perspective of the speaker is the rationale for the restriction. *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819 (1995).

68. Viewpoint discrimination is impermissible in any forum. *See Good News Club v. Milford Cent. Sch.*, 533 U.S. 98 (2001).

69. As a state-owned recreational and entertainment facility, EPIC Waters Indoor Waterpark at minimum constitutes a non-public forum. *See Chiu v. Plano Indep. Sch. Dist.*, 260 F.3d 330, 347 (5th Cir. 2001) (finding that public property that is not by tradition or designation open for public communication is governed by nonpublic forum standards).

70. A non-public forum should not be mistaken for a private forum; as a government-sponsored medium of communication, it is subject to First Amendment constraints. *Id.*

71. "The government can restrict access to a nonpublic forum 'as long as the restrictions are reasonable and [are] not an effort to suppress expression merely because public officials oppose the speaker's view.'" *Ark. Educ. Television Comm'n v. Forbes*, 523 U.S. 666, 677–78 (1998) (quoting *Cornelius v. NAACP Legal Def. and Educ. Fund, Inc.*, 473 U.S. 788, 800 (1985)).

72. In the present case, Abbott's directive to the City of Grand Prairie to cancel Dr. Knight's Eid event was highly unreasonable given that the waterpark can be rented

out for private events by many other groups, most notably Christian groups in observance of their own religion.

73. Moreover, Abbott's directive plainly stems from his own Islamophobia, a hallmark of his tenure as Governor which he has spent targeting Muslims. Threatening to pull state funds is not new to Abbott, which is something he has done as recently as August 2026 against Dallas-Fort Worth (DFW) Airport and Houston's George Bush Intercontinental Airport (IAH) over Islamic ritual ablution stations. He signed HB 4211 into legislation to prohibit Muslim-centric residential developments, ordered state inquiries into North Texas mosques, and targeted small local groups offering religious divorce counseling and mischaracterized them as illegal religious courts practicing Sharia law. It is no secret that Abbott opposes Islam in Texas.

74. By barring Muslims from celebrating their religious holiday at the facility while allowing Christian events to continue being hosted there among many other events, the City and its Waterpark have engaged in impermissible viewpoint discrimination at Governor Abbott's will against Dr. Knight. *See Moore v. Cty. of Van, Tex.*, 238 F. Supp. 2d 837 (E.D. Tex. 2003) (holding that the city had violated the First Amendment by barring meetings with a religious perspective while allowing a wide range of other activities at its community center.).

75. Given the direct and explicit nature of Abbott's threat to withhold hundreds of thousands of dollars in state grants in order to coerce the cancellation of a specific Islamic event, Dr. Knight has asserted the violation of her First Amendment rights with sufficient particularity to overcome Abbott's presumption of qualified immunity.

**CLAIM V**

***Abbott's demand & the City & Waterparks' compliance violated Dr. Knight's Fourteenth Amendment rights under the Equal Protection Clause.***

76. Plaintiff restates the foregoing paragraphs as is set forth fully herein.

77. To bring an Equal Protection Clause claim, a plaintiff must allege that she received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from discriminatory intent. *Mohamed for A.M. v. Irving Indep. Sch. Dist.*, 252 F. Supp. 3d 602, 623 (N.D. Tex. 2017).

78. Religion is a suspect classification subject to strict scrutiny under the Equal Protection Clause. *See Wayte v. U.S.*, 470 U.S. 598, 608 (1985) (stating "the decision to prosecute may not be deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification.").

79. It is insufficient to show the law has been enforced against some and not others. *Cty. of Port Arthur v. Thomas*, 659 S.W.3d 96, 115 (Tex.App.-Beaumont 2022) (quoting *State v. Malone Serv. Co.*, 829 S.W.2d 763, 766 (Tex. 1992)). Rather, one must show "the government has purposefully discriminated on the basis of such impermissible considerations as race, religion, or the desire to prevent the exercise of constitutional rights." *Id.*

80. Texas courts have defined discriminatory intent to mean that "the decision maker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effect on an identifiable group." *Mohamed for A.M.* at 623.

81. Allegations of discriminatory intent that are "merely conclusory, without reference to specific facts, will not suffice" — a plaintiff must plead specific factual material showing that the government actor's conduct was motivated by religious animus. *Id.*

82. In the present case, Dr. Knight was treated entirely differently from the organizers of events like "EPIC Church Days," as she was disallowed from hosting her Eid event for Muslims at the Waterpark by the City under orders from Abbott while he has yet to raise an eyebrow at those who host the many recurring Christian events at the very same facility throughout the year.

**CLAIM VI**

***The City and Waterpark's compliance with Abbott's demand constitutes a breach of contract.***

83. Plaintiff restates the foregoing paragraphs as is set forth fully herein.

84. Under common law, recovery under a breach of contract claim requires proof of four elements: (1) the existence of a valid contract, (2) performance or tendered performance by the plaintiff, (3) breach of the contract by the defendant, and (4) damages sustained by the plaintiff as a result of the breach. *Cty. of Houston v. Swinerton Builders, Inc.*, 233 S.W.3d 4, n.7 (Tex.App.-Houston [1st Dist.] 2007) (citing *Crowder v. Scheirman*, 186 S.W.3d 116, 118–19 (Tex.App.-Houston [1st Dist.] 2005, no pet.)).

85. All four elements are satisfied here. Dr. Knight like all years prior had a valid contract with the waterpark for her upcoming Eid event. She was current on making payments per their agreement and in full compliance with the terms of the contract before the City and Waterpark abruptly breached without legal justification. Dr. Knight sustained damages in the form of payments made, as well as ticket sales she had already made.

86. Further, the City is not entitled to governmental immunity.

87. Under Texas law, a municipality is generally immune from suit unless immunity is waived by clear and unambiguous statutory language. Tex. Gov't Code Ann. § 311.034.

88. Tex. Loc. Gov't Code Ann. § 271.152 waives sovereign immunity to suit for breach of a written contract for goods or services with a local governmental entity.

89. Dr. Knight's contract with the Waterpark qualifies as such a contract under § 271.151(2)(A), which waives sovereign immunity for a written contract stating the essential terms of the agreement for providing goods or services, properly executed on behalf of the local governmental entity.

90. Moreover, the Texas Supreme Court has held that the nature of the function the municipality was performing when it entered into the contract governs immunity analysis. *Wasson Ints., Ltd. v. Cty. of Jacksonville*, 559 S.W.3d 142 (Tex. 2018).

91. A contract primarily intended to benefit the city rather than the general public has been found to indicate a proprietary rather than governmental function, thereby removing governmental immunity.

92. The City's operation and renting of the Waterpark for private events is a proprietary function, not a governmental one, further supporting the waiver of immunity.

**Prayer for Relief**

WHEREFORE, on all Causes of Action, Plaintiff requests that this Honorable Court enter judgment in her favor and against Defendants, and issue an order awarding the following relief: declaratory judgment that the cancellation of Dr. Knight's Eid 2026 celebration at EPIC Waters Indoor Waterpark violated her rights; the issuance of a permanent injunction enjoining Abbott

from compelling the City of Grand Prairie to shut down Muslim events and gatherings at EPIC Waters Indoor Waterpark; the issuance of an injunction allowing Dr. Knight to host a 2027 Eid event at EPIC Waters Indoor Waterpark; monetary damages under Tex. Gov't Code § 271.153, including transaction fees incurred while refunding ticket purchasers as well as her anticipated profit from the 2026 Eid event; reasonable attorney's fees, and interest; together with such other and further relief as may be just and proper.

## Jury Demand

Plaintiff demands a trial by jury of the above-referenced causes of action.

Dated: November 17, 2026

Respectfully submitted,

BY: *<u>/s/ Lena F. Masri</u>*
LENA F. MASRI (VA 20251)
GADEIR I. ABBAS (VA 20257)*
HUFSA HUSAIN (D.C. 90021903)

**CAIR LEGAL DEFENSE FUND**

453 New Jersey Ave, SE
Washington, DC 20003
(202) 742–6420

* *Gadeir Abbas is licensed in VA only, not in D.C. Practice limited to federal matters.*

ATTORNEYS FOR PLAINTIFF